Lee v. Chinatown Take-Out Inc. Judge Sullivan I have a quick question about the wage notice issue. District courts seem to be all over the place on this, some applying it retroactively, some not. That's really a state law issue. Is there any reason why we shouldn't just certify that to the New York State Court of Appeals and ask them to tell us what is the proper way to deal with people like your client who sort of started work in one period and continued working through another? Yes, Your Honor. The cases on point in the district refer to – Sorry. The brief I was looking at on my computer just crashed. Let me bring it up. Sorry about that. Excuse me. I believe Kokoletsi referred to a state court precedent on that issue that we cited you in our brief. Well, you're speaking as a matter of state law, even though federal courts seem to be all over the place on this? Your Honor, I don't believe the federal courts are all over the place on this. I don't believe this was in the appellee's briefing. I think Judge Wesley is speaking. Oh, go ahead. No, he's celebrating. Oh, I'm sorry. It doesn't matter whether federal courts are all over the place or not if state law isn't clear. If state law isn't clear, then certification makes sense. If it is an issue, it is likely to recur. Federal courts may be the same way but be wrong if it's an issue of state law. What state law cases can you cite for the proposition that you are making to us that the district court heard with respect to this? Off the top of my head, I don't have cases. I apologize. All right. That was the only question I had. Very well, you've reserved three minutes for rebuttal. Mr. Schweitzer, we'll now hear from Mr. Weinrad. Good morning, Honorable Judges. In my limited time period since I addressed everything in my brief, I wanted to address the issue regarding the calculation of damages for failure to pay overtime that was issued by the court below. And then I wanted to go to another issue dealing with what I believe is clear perjury in the court below that's going to affect several other issues, including the issues raised by Mr. Schweitzer. And if there's time, then I'll go to the other issues as well. Going to the issue about the calculation of the overtime damages, we believe that the court below erred in two respects. The schedule of the employees where they had a set schedule every day. From Sunday through Thursday, they worked from 11 o'clock to 8. And on Friday, they worked from 11 to 2. That was a schedule day in and day out. And in light of this, it's absurd. What the judge did, the judge ruled that they were paid for the first 40 hours and they were paid nothing for the last eight hours. It was 48 hours of work that week. They paid for the first 40 and they were not paid anything for the last eight. And there were two things. That was one thing that the judge did. The other thing the judge did was taking the hourly, the weekly wage, let's say $650 for one of these employees, and divided it by 40 instead of dividing it by 48. So there's two consequences of what happened. One is that the hourly rate was a much higher rate. And also, they were paid nothing for eight hours. Excuse me, you have one more minute. Instead of only giving 50% of the wage to that, the judge awarded 150%, which resulted in three times the amount of damages than would have been done otherwise. I cite two cases in my brief, several cases. One is Cazares v. Atlantic Farm and Food District Court case. And I cite others that says that when the work schedule is pretty steady week after week, you have to divide the weekly salary by all the hours and consider that they got paid for all the hours. That's point number one. Point number two is dealing with the perjury issue. These employees, the Chinatown takeout is a black kosher restaurant that's in an orthodox community. And they're under strict regulation as far as to keep the kosher supervision. And it's absurd to say that they were open on the Saturdays. If anyone would see that the restaurant's open, they would lose their certification. They would lose all their customers. Orthodox Jews wouldn't go to that restaurant. And even the judge herself, she wrote in her opinion that these claims that they were actually working on the Jewish holidays and actually it was incredible. It was unbelievable. And it just doesn't make any sense. So in light of that, there are two points. One is that the judge, they weren't just making a statement that could have been like a mistake in recollection or confusion and it wasn't purposeful. They went on trial. They testified for several minutes. They doubled down when confronted about the fact, what do you do on the Jewish holidays? Well, we were cleaning a whole day, even though the store is closed for a week at a time for some of these holidays. And we were driven by the Orthodox Jewish owner's wife to the restaurant on Saturday, even though it's unheard of. Anyone that lives in New York that's familiar with the Orthodox Jewish community, they would never do anything and they wouldn't do it to kill their business. So first of all, you shouldn't believe the rest of the testimony. And second of all, there's a recent case that I cited in my brief in which the judge ruled, it was Marcelino v. 374 Food, Inc., where they said it's clear there's perjury and it's not just a mistake and confusion. It's appropriate for the judge to say that we're not going to award damages, even if it's well-deserved. And in that opinion, there's a citation to Justice Scalia where he said, even in cases where it's well-deserved damages, nevertheless, it makes sense to not award damages in a situation where someone tries to pull a fast one on the court. Let's pause there, Mr. Weinreb, because I want to give the panel some opportunity to ask some questions. So Judge Calabresi, I know you have at least one question for Mr. Weinreb. Well, I have several. One is you're talking about the hours worked and whether it should be divided by one or the other. But in your own argument, you said the plaintiffs worked at most 40 hours. And if that is so, haven't you conceded that the figure should be 40? So that's my first question. Your first argument is something that in a way, in your own brief, you've conceded the other way. As to the perjury thing, the court said that they found exaggerations on both sides. Now, you know, maybe you're saying that on one side it was perjury and the other side it was just property. But aren't we really in a very difficult situation to second guess the court? The third thing was an argument that I thought you would make, but since I'm not sure you really made it in the briefs, I'm not going to raise it for you. I thought it was a very strong argument you might have made, but I don't think you made it. Thank you. All right. Do you want to respond to those? Yeah, okay. Let me respond. To the question about conceding, about saying that they worked 40 hours, I mean, there's no question that they worked, that that was a set schedule. Even as to the question as to how many hours they worked, the question really was did they work through the lunch times and did they have a lunch break or not. There's no question that they had a set schedule of 48. The schedule is exactly like I mentioned. It was from 11 to 8 every day, except for Friday was 11 to 2. So if employees work a very set schedule, it's absurd to say that the pay would cover 40 hours and zero for the next eight hours. It's clear that the only time, and one of the cases that the cases cite to, I'll give you the citation, explains that when do you say that you don't average the hours over the week, is if you have a really fluctuating schedule. So one week the person would work four extra hours overtime, next week work six hours of overtime, next week work no overtime. So if you switch from week to week to week, it's a different schedule. So it makes sense to say that they got paid for the first 40 hours and nothing for the rest. But when the schedule is very, very set, it's the same, in our case, the same 48 hours every week. It doesn't make sense to say, okay, we're going to allocate the first 40 hours is what we paid for and we're not paying for the next to last eight. It just doesn't make any sense. And I think many cases support that. Then the question about the burden, let's say the perjury, why should one side be believing the other? The judge, there's nothing in the, you know, even if the judge, when the judge says exaggeration, exaggeration is, if anything, that means it's a, let's say a small lie. I don't know what, I don't know what the way to describe, but it's not a blatant assumption. It's not blatant. And also the judge doesn't have first out knowledge as to whether they really exaggerate or not, or they said the truth. If you, as far as the point about the, them working in the being open on the holidays, it's, it's so absurd that, that, that, that in, in a kosher Orthodox Jewish community that you would have, that you would have a restaurant open during, during, during the holidays. And that, you know, it's, it's, it's for sure a lie and trial. It was, it wasn't like that. It wasn't like a one statement. It was, it was, I was pressing them at trial. Yes. Counsel, this was a, this was a trial that the judge saw because of the, you know, if this were a jury trial, the jury would have been instructed that you don't, you can accept to reject the portions of the testimony of a given witness, which is exactly what this judge did. You want us to find as a matter of law that the judge erred in accepting part of their testimony and accepting part of your client's testimony elsewhere. I don't know why you continue to harp on this. I, I don't, I don't see where you're going to go with it, but you want us to say that the judge erred in finding them credible in some regards. I think if someone, if, if, let me ask you this, did your client record their hours as he's required to do under New York law? Did he give them a wage notice at the beginning of their employment is required to do on a New York law. Did he give them, did he give them, excuse me, did he give them a notice of their, as he's required to do every week with regard to their weekly wages with regard to their wages and any deductions there from, did he do any of that? No. Is that not the case? Had he done all those things, you wouldn't have these problems, but that, but part of the problem for your clients in this case is they kept no records. Now, let me ask you this. What was the testimony with regard to the hours that they work during Monday through Thursday? You say they worked 11 to eight. Was there any testimony from any individual that actually was present with them between the hours of eight and 10 from Monday to Thursday that to say that they did not work those during between eight and 10 o'clock at night? I believe my recollection is that, that each of the defendants said that they, that they, that they did not work after eight. That's my recollection. That they said it. And the reason why, and the reason why they stuck around is because since they lived together with Tom, they need, they just stuck around. He's a, you said the defendants, you meant the plaintiff, you said the plaintiff testified that they did not work. I'm sorry. The plaintiff testified that they worked. Right. And I'm saying, yeah, but the defendants, the defendants, my recollection is that all of them, all of them mentioned that they, that they did not work past eight. Well, they said that they were instructed to not work past eight and that they had no knowledge. In fact, the district court, excuse me, let me finish. I'm sorry. Okay. The district court or the magistrate judge in her decision said that the defendants credibly testified. That they lacked actual or constructive knowledge that they worked. That's trial transcript one 87 and two 13 to 15. I'll take a look at that. But my recollection is, is that they didn't say that they didn't see them working, but that they were told not to work. Isn't that what they, isn't that what their testimony was? For sure. They were told not to work. And I believe that they also, I could, I could look and see. Yeah, I have, I have a summary of the, of the, in my supplemental appendix, I have a summary of all the testimony, the short summary. So, so I believe it's, I believe it's in there. I believe so. I can't say a hundred percent, but I believe it is. If I may, if I may address the last point, I think what judge Colabrisi was talking about was the, as far as the straight hours, I do, I cited to a case contrary, contrary versus Langer. And in that case, judge, judge Gorenstein said that based on the, based on the statute, the statute of section one 98 of the, of the labor law, when I've read it, it says that the minimum wage is equal to the minimum wage. And I believe that that is true. Okay. Now this is Calabresi. Now you're coming to my point, but the problem with Contreras, which is the only place that you raise it, there's that Contreras while it speaks to whether under one 98, you're entitled to just what the fair labor standards act, which says the minimum wage or what the New York labor law might or might not do. That's the question of giving the actual wage. The question in this case is whether when you act through one 91, that claim can be made for the New York law and Contreras specifically doesn't raise one 91. So my question is, have you raised that point, which you're now just mentioning at the last minute, because I, it's a point that's a very interesting one. And I don't know what New York law on it is so that if it were properly raised, I might be inclined to certify, but I don't see how you raised it by just citing Contreras. Can you explain whether Contreras or anything you said attaches the one 98 claim to one 91? Um, I think, I think Contreras is analyzing, um, uh, the New York labor law. And only under one 98, but the claim here made was that this can be made under one 91. Now there are some New York cases that one 91 deals only with timing. So that it may be that the district court was incorrect, but I don't see where anywhere you have made, you have to reverse what the district court held. Okay. Yeah. Okay. Yeah. Okay. Okay. Yeah. So I believe, I believe that what, what the judge Gorenstein opined was that, that what, since one 98 is only a provision dealing with penalties, remedies, um, and it can only apply something that is specific in another section of the labor law. And there's nothing specific in the other sections of the labor law, like one 91 that says that you can get paid more than minimum wage. I believe that's covered in that opinion. Thank you. I don't. Okay. All right. Okay. Well, let's, uh, let's include it there. And so Mr. Schweitzer, you're still around. Just why do you have three minutes of rebuttal? Uh, thank you, your honor. I'd like to, since, uh, defense counsel didn't, um, address any of the points that I made on argument, I'd like to rebut the points that were, uh, first raised by him. Uh, first, excuse me, that, uh, honest observation as to what was testified to by the defense witnesses is correct. Uh, three witnesses testified on behalf of the defense, uh, the defendant himself and his two sons who at various times acted as managers of the front sales counter of the restaurant. Uh, each of them testified that they did not observe, uh, plaintiffs during their work and they had no knowledge of what they were actually doing between eight and 10. Uh, furthermore, excuse me, uh, the quote, set the schedule that, uh, defense counsel was talking about was not the actual hours that the plaintiff's work, the plaintiff's work was dependent on, uh, Tom, their direct supervisor and the head chef who, uh, drove them to work, who set them to work when they got there, who kept them working all day and who, uh, drove them back to their domicile at the end. Uh, excuse me, as for, uh, the calculation of the first 40 hours, excuse me, as far as the calculation of their regular rates based on the first 40 hours, the authority for that comes from a wage order promulgated under the New York labor law. That's 12 and Y C R R section one, four six dash 3.5, which directs a court supplying the New York labor law to could you, could you give me that again, please? 12, uh, title 12 and Y C R R that's New York codes. Yeah. I'm familiar with what that is. Go ahead. Uh, section one, four, six dash 3.5. Thank you. Excuse me. You have one more minute. Uh, thank you. Then I'll move on to a perjury. Uh, your honors questioning was on point on this issue. Uh, the review is for, excuse me, is a extremely deferential to fact finders on this question. And, uh, as your honors pointed out, a jury or a judge sitting a fact finder would be entitled to believe certain portions of testimony would be entitled to disbelieve certain portions of testimony. Um, near disbelief of certain portions of testimony is not dispositive of perjury. There needs to be a finding of a fraud upon the court, which there wasn't here. Uh, excuse me. And that analysis was actually done on the, uh, defendant's motion to amend or alter the judgment. And also here, excuse me. I just want to be clear that, uh, the testimony was that Tom who is Chinese and not Orthodox Jewish, who was the former owner who had access to the restaurant and who remained the head chef brought Chinese kitchen workers who worked directly under him to the restaurant, not to serve customers, but to make clean and maintain the premises. I believe I'm at the end of my time. All right. Uh, we'll reserve decision. Thank you both very much. And we'll now move to.